# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

JASON A. MAHE,

    Plaintiff

v.

HARTMAN, et. al.,

    Defendants

Case No.: 3:21-cv-00069-MMD -WGC

**Report & Recommendation of
United States Magistrate Judge**

Re: ECF Nos. 8, 9

    This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

    Before the court are Plaintiff's motions for an emergency temporary restraining order (TRO) or injunction for prospective relief for life-saving intervention. (ECF Nos. 8, 9.)[1]

    After a thorough review, it is recommended that the motions be denied.

## I. BACKGROUND

    Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), currently housed at Northern Nevada Correctional Center (NNCC). On February 1, 2021, he filed a document titled an "Order to Show Cause for an Preliminary Injunction and a Temporary Restraining Order." (ECF No. 1-1.) In that document, Plaintiff states that Correctional Officer Bartlett, who allegedly assaulted Plaintiff in 2019, was supposed to be kept separate from Plaintiff, but is now working in Plaintiff's unit and has been threatening Plaintiff. Plaintiff has a

---

[1] ECF Nos. 8 and 9 are identical, but were docketed separately by the Clerk to reflect that Plaintiff seeks a TRO and/or preliminary injunction.

separate lawsuit against Bartlett and others for claims including excessive force: Case No. 3:20-cv-00261-CLB. In the filing in this case, Plaintiff claims that Bartlett and others have threatened him to drop his pending lawsuit, and have retaliated against him for his complaints. One day, Plaintiff refused to come out of his cell because he feared for his safety, and he was dragged out of his wheelchair and sprayed with pepper spray. Plaintiff claims that due to his history as a confidential informant for the Inspector General's Office, he cannot safely go to any other NDOC facility; therefore, he asks the court for an order that he be transferred out of NDOC (through an interstate compact).

This filing was not accompanied by a complaint, the filing fee or an application to proceed in forma pauperis (IFP). On February 2, 2021, the court ordered Plaintiff to file a complaint and either pay the filing fee or submit a completed IFP application for an inmate by April 5, 2021. (ECF No. 3.)

On February 9, 2021, Plaintiff filed an application to proceed IFP. (ECF No. 4.) Plaintiff subsequently filed a pro se civil rights complaint under 42 U.S.C. § 1983, and motion for leave to file claim 2 of the complaint under seal. (ECF Nos. 5, 6.)[2]

The complaint names the following as defendants: NNCC Associate Warden of Programs Henley, NNCC Warden Russell, Lieutenant Miller, Lieutenant Gerebaldi, Nurse Melissa, Nurse Megan, Nurse Malorey, Dr. Martin Naughton, Caseworker Conlin, Law Library Supervisor Jennifer McCain Dunbar, NNCC Sergeant Flemm, Office of the Inspector General (OIG) Investigator Erik Ortiz, unknown OIG officers/investigators, unknown medical staff.

---

[2] The complaint has been provisionally sealed by the Clerk until there is a disposition of the motion for leave to file at least a portion of the complaint under seal.

He separates his allegations into four "claims"; however, each "claim" actually contains multiple claims, and some contain multiple subject matters. Claim 1 concerns three topics: (a) his wheelchair: He alleges that Conlin threatened to take his wheelchair away for reporting her friend Bartlett for his assault on Plaintiff in 2019; Dr. Naughton re-wrote medical orders from Plaintiff having a wheelchair to prescribing him a walker even though he never saw or evaluated Plaintiff; and Nurses Megan, Melissa and Malorey told another physician, Dr. Lorenzo, not to give Plaintiff his wheelchair back; (b) his pain medication: he avers that he saw orthopedic specialist Dr. Bray in Reno, and Dr. Bray ordered him pain medication, but Nurse Malorey told Plaintiff on March 2, 2021, that she called Dr. Bray to get the pain medication order switched, stating the order said "post-op pain meds" even though Dr. Bray had told him he needed pain medications as a result of the 13 gunshot wounds he suffered and because of bones in his hips and legs and an arm that was broken and had not been fixed; (c) a cell extraction: on January 27, 2021, Plaintiff was forcibly extracted from his cell without due process in retaliation for reporting Bartlett.

In Claim 2, Plaintiff asserts that he has been involved with OIG investigations, and he has faced retaliation and harassment, and wants to be transferred out of NDOC because he fears for his safety.

In Claim 3, Plaintiff alleges that his grievances have wrongfully been denied in retaliation, and that the law library supervisor has retaliated against him by denying him legal documents and supplies.

In Claim 4, Plaintiff states that his grievances have not been handled properly. He alleges that he wrote grievances about inmates learning to cell doors and regarding a group of inmates

having his family's address, but nothing was done. He claims this was retaliation by Gerebaldi and Miller.

Shortly after filing his complaint, Plaintiff filed this emergency motion for TRO and PI. In this motion, Plaintiff states that he had a seizure and he fell and hurt his left arm. He went to Carson Tahoe Hospital, where he claims the emergency room doctor put a cast on, and ordered Plaintiff to see an orthopedic specialist and to be given oxycodone pain medication (which Plaintiff asserts he did not want, but the doctor insisted). He was put on oxycodone on March 14, 2021, but on April 7, 2021, he claims he was cut off from the oxycodone "cold turkey" by Dr. Naughton, in retaliation for his pending law suit, when he should have been tapered off the medication. He states that cutting him off the medication like this could cause seizures and withdrawal symptoms that could be life threatening. He asks for an order that the court immediately intervene and put his pain medication "on a court order" until he receives surgery to fix his arm and leg and sees a pain specialist and neurologist again, and that NDOC not be able to interfere with what the specialists order.

On April 12, 2021, Plaintiff also filed a motion to be immediately heard to the risk of his life being in jeopardy, which asserts that an officer told other inmates about his confidential informant activities, which he believes puts him at risk of being harmed. (ECF No. 7.)

This Report and Recommendation addresses only the emergency motions for injunctive relief set forth at ECF Nos. 8, 9. The motions at ECF Nos. 1-1 and 7 will be addressed separately.

## II. LEGAL STANDARD

The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the

1  court to intervene to secure the positions until the merits of the action are ultimately determined.

2  *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

3      Injunctions and temporary restraining orders are governed procedurally by Federal Rule of

4  Civil Procedure 65, but case law outlines the substantive requirements a party must satisfy to obtain

5  an injunction or restraining order. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund,*

6  *Inc.*, 527 U.S. 308, 319 (1999) ("[T]he general availability of injunctive relief [is] not altered by

7  [Rule 65] and depend[s] on traditional principles of equity jurisdiction.").

8      A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded

9  as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every

10  case, the court "must balance the competing claims of injury and must consider the effect on each

11  party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense*

12  *Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant

13  motion requires that the court determine whether Plaintiff has established the following: (1) he is

14  likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of

15  preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public

16  interest. *Id.* at 20 (citations omitted).).

17      The Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy

18  additional requirements when seeking preliminary injunctive relief against prison officials.  The

19  PLRA provides, in relevant part:

20          Preliminary injunctive relief must be narrowly drawn, extend no
            further than necessary to correct the harm the court finds requires
21          preliminary relief, and be the least intrusive means necessary to
            correct that harm. The court shall give substantial weight to any
22          adverse impact on public safety or the operation of a criminal
            justice system caused by the preliminary relief and shall respect the
23          principles of comity set out in paragraph (1)(B) in tailoring any
            preliminary relief.

5

18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a)...operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

A temporary restraining order is appropriate when irreparable injury may occur before the court can hold a hearing on a motion for preliminary injunction. *See* 11A The Late Charles Alan Wright & Arthur R. Miller, et. al., *Federal Practice and Procedure*, § 2951 (3d ed. 1999). The standard for issuing a temporary restraining order is identical to the standard for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001); *see also* 11A The Late Charles Alan Wright & Arthur R. Miller, et. al., *Federal Practice and Procedure*, § 2951 (3d ed. 1999) ("When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for preliminary injunction and the proceeding is not subject to any special requirements."). A temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70,* 415 U.S. 423, 439 (1974).

In addition, in seeking injunctive relief, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pacific Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 635 (9th Cir. 2015). "This requires a sufficient nexus between the claims raised in a motion for injunctive relief and

1 the claims set forth in the underlying complaint itself." *Id.* "The relationship between the

2 preliminary injunction and the underlying complaint is sufficiently strong where the preliminary

3 injunction would grant 'relief of the same character as that which may be granted finally." *Id.*

4 (quoting *De Beers Consl. Mines v. United States*, 325 U.S. 212, 220 (1945)). "Absent that

5 relationship or nexus, the district court lacks authority to grant the relief requested." *Id.*

6                                   **III. DISCUSSION**

7          Preliminarily, the court notes that Plaintiff's complaint is currently in line to be screened

8 under 28 U.S.C. § 1915(e) and 28 U.S.C. §1915A; however, as it stands, Plaintiff's claim

9 concerning his pain medications in the complaint is that he saw Dr. Bray in February of 2021,

10 who prescribed him pain medication, and then on March 2, 2021, Nurse Malorey said she called

11 to get the order switched, stating that the order said "post-op pain meds." Plaintiff asserts that

12 this was incorrect and that Dr. Bray said Plaintiff needed the pain medication then due to prior

13 gunshot wounds and injuries.

14          The issue presented in this motion for injunctive relief, on the other hand, is that Plaintiff

15 suffered a seizure in March, and was taken to the emergency room and was supposed to get

16 oxycodone pain medication, which he did on March 14, 2021, but then Dr. Naughton

17 purposefully cut Plaintiff off "cold turkey" on April 7, 2021, instead of tapering Plaintiff off of

18 the medication. While broadly speaking, the complaint and the motion both involve the issue of

19 pain medication, the issue raised in the motion for injunctive relief is separate from that raised in

20 the complaint. Plaintiff now claims his pain medication prescribed in connection with a

21 subsequent incident was stopped too soon, which he contends will cause seizures and harmful

22 withdrawal symptoms. This is entirely different from his claim that a nurse changed an order

23 regarding a prior order for pain medication. In the absence of a sufficient nexus between the

relief sought in the emergency motions and the conduct at issue and relief sought in the

complaint, the court lacks authority to grant the relief Plaintiff has requested.

As such, Plaintiff's emergency motions for injunctive relief should be denied.

## IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING**

Plaintiff's emergency motions for injunctive relief (ECF Nos. 8, 9).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: April 16, 2021

William G. Cobb
United States Magistrate Judge

8