UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| JASON A. MAHE,<br><br>       Plaintiff<br><br>v.<br><br>HARTMAN, et. al.,<br><br>       Defendants | Case No.: 3:21-cv-00069-MMD-WGC<br><br>**Report & Recommendation of<br>United States Magistrate Judge**<br><br>Re: ECF No. 1-1 |

This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4.

Before the court is Plaintiff's motion seeking injunctive relief in the form of a transfer out of NDOC for his safety. (ECF Nos. 1-1.) The court directed the Attorney General's Office to file a notice indicating whether it would enter a limited notice of appearance for the purposes of responding to this motion, and if so, to file a response. (ECF No. 11.) The Attorney General's Office did enter a notice of limited appearance, though it states it is for purposes of engaging in settlement discussions only; however, the Attorney General's Office also filed two responses to which appear to address these motions. (ECF Nos. 17, 18.) The court had given Plaintiff until May 12, 2021, to file a reply, but Plaintiff has not filed anything further.

After a thorough review, it is recommended that ECF No. 1-1 be denied.

### I. BACKGROUND

Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC), proceeding pro se with this action pursuant to 42 U.S.C. § 1983. (Compl., ECF No. 5.) Plaintiff filed a complaint, which the court screened. (ECF No. 12.) Plaintiff was allowed to proceed with

an Eighth Amendment failure to protect claim against Ortiz based on allegations that Plaintiff served as an informant to the Office of the Inspector General (IG), reporting on "dirty" NDOC employees, which has caused a risk to his safety, including assault. Plaintiff met with IG investigator Ortiz, who promised him an out-of-state transfer for his protection, but this was reneged when he and Ortiz had a falling out. Plaintiff claims that because of his history as an informant, he is not safe on any NDOC yard.

Plaintiff was allowed to proceed with a retaliation claim against Conlin based on allegations that Conlin tried to take away his wheelchair because Plaintiff reported Conlin's friend (Bartlett) for the assault. In addition, he was permitted to proceed with retaliation and excessive force claims against Hartman based on allegations that when Plaintiff spoke to Hartman about the retaliation and threats he was facing, Hartman responded by physically attacking and injuring Plaintiff.

Plaintiff was further allowed to proceed with an Eighth Amendment deliberate indifference to serious medical needs claim against Conlin, Naughten, RN Manager Megan, RN Melissa and RN Malorey based on allegations that he suffered injuries and conditions requiring him to use a wheelchair and not a walker, but they unreasonably acted to deprive him of the wheelchair, causing him to suffer in pain.

Plaintiff's other claims were dismissed with and without leave to amend, and Plaintiff has not timely filed an amended complaint. For purposes of this motion, it is important to note that his claim that he was forcibly extracted from his cell was dismissed with leave to amend. In addition, his claims alleging that law librarian Dunbar violated his right of access to courts and retaliated against him by not giving him supplies, documents, books or other materials were also dismissed with leave to amend.

By way of background, Plaintiff asserts that Correctional Officer Bartlett utilized excessive force against him, and he has a pending civil rights lawsuit against Bartlett and others for this conduct, as well as other claims in Case 3:20-cv-00261-MMD-CLB.

In ECF No. 1-1 in this case, Plaintiff states that on January 27, 2021, after numerous attempts to report Bartlett for threats and retaliation for that lawsuit to Lieutenant Miller, there was a failure to respond. He also asserts that Miller was upset that Plaintiff reached out to mental health for help, and in response, Miller said he would move Plaintiff, but to a "strip cell" and take all of his property. Plaintiff further claims that after the incident involving Bartlett, there was supposed to be a separation between Plaintiff and Bartlett, but Bartlett has been working in Plaintiff's unit again, and has threatened Plaintiff with assault, and has threatened Plaintiff's family if Plaintiff did not drop his lawsuit. Plaintiff has reported this to higher-ranking staff, but nothing has been done. Plaintiff has refused to leave his cell out of fear of being assaulted, and Miller told him that he hoped Plaintiff continued to refuse (to leave his cell) so that "his boys can come in and kick [Plaintiff's] ass."

An extraction team apparently came to Plaintiff's cell to remove him, and used pepper spray three times and when Plaintiff refused, the team rushed into Plaintiff's cell and dumped him out of his wheelchair, and shoved Plaintiff to the ground and assaulted him. Miller ordered the team to drag Plaintiff onto the tier, and he suffered injuries which required him to be taken to the hospital. When he returned, correctional officials told him that he had to give them his wheelchair, which he needs because he has partial paralysis of his left leg. When he advised them of this, he was tasered and beat up and left in his cell without his wheelchair. Medical was ordered to leave, and then Garibaldi refused to allow Plaintiff to shower even though he was covered in pepper spray.

1     Plaintiff also mentions that since he named law library supervisor Jennifer Dunbar as a defendant, she has retaliated by holding his out-going legal mail up to eight days on two occasions, and has wrongfully denied him indigent legal supplies and instead gives him what she feels he needs. His states that his legal mail has been opened, and mail sent to federal authorities has been returned to sender so that the mail room can open and read it. He further claims that his lawyer has been precluded from adding his number to the attorney call list.

    Plaintiff then asserts that due to his history as a confidential informant and due to the threats and retaliation he has received, he cannot safely go to any other NDOC yard. He asks to be moved from NDOC custody for the remainder of his sentence for his protection and safety due to the retaliation, harassment and threats of assault he has experienced within NDOC.

## II. LEGAL STANDARD

    The purpose of a preliminary injunction or temporary restraining order is to preserve the status quo if the balance of equities so heavily favors the moving party that justice requires the court to intervene to secure the positions until the merits of the action are ultimately determined. *University of Texas v. Camenisch*, 451 U.S. 390, 395 (1981).

    Injunctions and temporary restraining orders are governed procedurally by Federal Rule of Civil Procedure 65, but case law outlines the substantive requirements a party must satisfy to obtain an injunction or restraining order. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 319 (1999) ("[T]he general availability of injunctive relief [is] not altered by [Rule 65] and depend[s] on traditional principles of equity jurisdiction.").

    A preliminary injunction is an "extraordinary and drastic remedy" that is "never awarded as of right." *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations omitted). Instead, in every case, the court "must balance the competing claims of injury and must consider the effect on each

party of the granting or withholding of the requested relief." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 23 (2008) (internal quotation marks and citation omitted). The instant motion requires that the court determine whether Plaintiff has established the following: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in his favor; and (4) an injunction is in the public interest. *Id.* at 20 (citations omitted).).

The Prison Litigation Reform Act (PLRA) mandates that prisoner litigants must satisfy additional requirements when seeking preliminary injunctive relief against prison officials. The PLRA provides, in relevant part:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (1)(B) in tailoring any preliminary relief.

18 U.S.C. § 3626(a)(2). Thus, § 3626(a)(2) limits the court's power to grant preliminary injunctive relief to inmates. *See Gilmore v. People of the State of California*, 220 F.3d 987, 998 (9th Cir. 2000). "Section 3626(a)...operates simultaneously to restrict the equity jurisdiction of federal courts and to protect the bargaining power of prison administrators-no longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Id.* at 999.

A temporary restraining order is appropriate when irreparable injury may occur before the court can hold a hearing on a motion for preliminary injunction. *See* 11A The Late Charles Alan Wright & Arthur R. Miller, et. al., *Federal Practice and Procedure*, § 2951 (3d ed. 1999). The standard for issuing a temporary restraining order is identical to the standard for a

preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush and Co., Inc.*, 240 F.3d 832, 839 n. 7 (9th Cir. 2001); *see also* 11A The Late Charles Alan Wright & Arthur R. Miller, et. al., *Federal Practice and Procedure*, § 2951 (3d ed. 1999) ("When the opposing party actually receives notice of the application for a restraining order, the procedure that is followed does not differ functionally from that on an application for preliminary injunction and the proceeding is not subject to any special requirements."). A temporary restraining order "should be restricted to serving [its] underlying purpose of preserving the status quo and preventing irreparable harm just so long as is necessary to hold a hearing, and no longer." *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70,* 415 U.S. 423, 439 (1974).

In addition, in seeking injunctive relief, "there must be a relationship between the injury claimed in the motion for injunctive relief and the conduct asserted in the underlying complaint." *Pacific Radiation Oncology, LLC v. Queen's Medical Center*, 810 F.3d 631, 635 (9th Cir. 2015). "This requires a sufficient nexus between the claims raised in a motion for injunctive relief and the claims set forth in the underlying complaint itself." *Id.* "The relationship between the preliminary injunction and the underlying complaint is sufficiently strong where the preliminary injunction would grant 'relief of the same character as that which may be granted finally." *Id*. (quoting *De Beers Consl. Mines v. United States*, 325 U.S. 212, 220 (1945)). "Absent that relationship or nexus, the district court lacks authority to grant the relief requested." *Id*.

### III. DISCUSSION

Here, the court finds that there is not a sufficient connection between the allegations asserted in this motion for injunctive relief (ECF No. 1-1) and the claims proceeding in this action to warrant the granting of injunctive relief.

Plaintiff references Lieutenant Miller's failure to respond to his reports of threats by Bartlett, the lack of separation with Bartlett, and Miller's comments and threats to Plaintiff's safety; however, neither Lieutenant Miller nor Bartlett are defendants in this action. Moreover, these allegations are not a part of this complaint.

Plaintiff mentions the extraction, the injuries he suffered, and the refusal to let him shower, but the claim regarding the extraction was dismissed with leave to amend, and Plaintiff failed to amend to state such a claim. Similarly, Plaintiff's claims against law library supervisor Dunbar were also dismissed with leave to amend, but Plaintiff opted not to amend.

Even if there was a sufficient connection between the allegations of the motion for injunctive relief and the claims proceeding in this action, Plaintiff has not demonstrated he has a likelihood of success on the merits as to any of the claims proceeding in this action.

For these reasons, Plaintiff's motion for injunctive relief at ECF No. 1-1 should be denied.

### IV. RECOMMENDATION

IT IS HEREBY RECOMMENDED that the District Judge enter an order **DENYING** Plaintiff's motion for injunctive relief (ECF No. 1-1).

The parties should be aware of the following:

1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to this Report and Recommendation within fourteen days of being served with a copy of the Report and Recommendation. These objections should be titled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the district judge.

2. That this Report and Recommendation is not an appealable order and that any notice of appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed until entry of judgment by the district court.

Dated: May 28, 2021

_____
William G. Cobb
United States Magistrate Judge